<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

<table>
<tr><td>CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE</td><td>MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903</td></tr>
</table>

April 17, 2020

Tracey C. Hinson, Esq.
Hinson Snipes LLP
116 Village Blvd., Suite 307
Princeton, NJ 08540
*Attorney for Plaintiff*

Fredrick L. Rubenstein, Esq.
James P. Nolan & Associates
61 Green Street
Woodbridge, NJ 07095
*Attorney for Defendants*

### <u>LETTER OPINION FILED WITH THE CLERK OF THE COURT</u>

**Re:** *Brady v. Township of Woodbridge et al.*
     **Civil Action No. 19-17868 (SDW) (ESK)**

Counsel:

Before this Court is Defendants Township of Woodbridge, Director Robert Hubner, Lieutenant Brian Murphy, Detective Sean Grogan, Sergeant Walter Bukowski, Lieutenant James Mullarney, and Officer Robert Bartko's (collectively, "Defendants") Motion to Dismiss Plaintiff Judge Carlia Brady's ("Plaintiff") Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons discussed below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.   <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Plaintiff is a judge in the Superior Court of New Jersey, Middlesex County, and an Asian American woman of Filipino descent. (Am. Compl. at Factual Allegations ¶¶ 1, 5.) The events giving rise to this suit began in June 2013, when Defendants arrested Plaintiff for hindering

apprehension of a fugitive. (*Id.* at Preliminary Statement.) At the time, Plaintiff lived with her then-boyfriend, Jason Prontnicki, in her Woodbridge home. (*Id.* at Factual Allegations ¶¶ 7–8.) Unbeknownst to Plaintiff, Mr. Prontnicki had outstanding warrants for second degree armed robbery and unlawful possession of a weapon. (*Id.* ¶ 10.)

Plaintiff alleges that she ended her romantic relationship with Mr. Prontnicki on June 9, 2013, when he loaned her car to his friend and was unable to return it to her. (*Id.* ¶¶ 11–13.) She subsequently asked him to move out of her home and, on June 10th, went to the Woodbridge Police Department to report her car missing or stolen. (*Id.* ¶¶ 13, 15.) Plaintiff alleges that one of the Defendants then ran a background check on Mr. Prontnicki and discovered the outstanding warrants for his arrest, at which point Officer Bartko, Sergeant Bukowski, and Lieutenant Mullarney began interrogating her about her relationship with Mr. Prontnicki. (*Id.* ¶¶ 24–27.) Following two hours of questioning, the three officers informed Plaintiff of Mr. Prontnicki's outstanding warrants and instructed her to call them if she learned Mr. Prontnicki's location. (*Id.* ¶¶ 31–32, 38–39.)

After Plaintiff returned home later that afternoon, Mr. Prontnicki returned as well and entered her home without her permission. (*Id.* ¶¶ 44–47.) Plaintiff alleges that she did not call the police because she was fearful for her safety and the safety of her elderly parents who were visiting. (*Id.* ¶ 48.) According to Plaintiff, Mr. Prontnicki stayed for about an hour, during which time he stated that he would be staying at his brother's home. (*Id.* ¶¶ 50, 51.) Plaintiff claims that she called and left a message for Officer Bartko minutes after Mr. Prontnicki left. (*Id.* ¶ 54.) Plaintiff alleges that her voicemail included information about where Mr. Prontnicki planned to stay, but that this portion of the voicemail was deleted in the copy that was later produced by Defendants. (*Id.* ¶¶ 55, 56, 146–49.)

The next day, Mr. Prontnicki called Plaintiff and the pair spoke for two hours. (*Id.* ¶¶ 62, 63.) After the call, Plaintiff called and left another voicemail for Officer Bartko to follow up on her previous message. (*Id.* ¶ 66.) That afternoon, Mr. Prontnicki returned and again entered Plaintiff's home without her permission. (*Id.* ¶¶ 77, 78.) His entry was witnessed by Lieutenant Murphy and Detective Grogan, who were surveilling Plaintiff's home. (*Id.* ¶¶ 68–74.) Mr. Prontnicki left Plaintiff's home an hour later, at which point Woodbridge police officers arrested him two blocks from the home. (*Id.* ¶¶ 83, 89.) Minutes later, the officers entered Plaintiff's home and also arrested her, without a warrant, allegedly for not calling the police while Mr. Prontnicki was inside her home. (*Id.* ¶¶ 93, 95.)

While in a holding cell, Plaintiff alleges that she informed Officer Bartko of the two voicemail messages that she had left for him, and which he had not checked. (*Id.* ¶¶ 104–06.) Plaintiff alleges that Officer Bartko then checked his messages and confirmed that Plaintiff had attempted to inform him of Mr. Prontnicki's whereabouts. (*Id.* ¶¶ 100, 111.) Despite this admission, Plaintiff alleges, Defendants refused to dismiss the charges against her and instead sought Complaint-Warrants against her for violations of the hindering statute, based on false testimony that she never contacted the police. (*Id.* ¶¶ 115–35.)

Plaintiff alleges that she was then maliciously and baselessly prosecuted for almost five years, until the remaining charges against her were dismissed on March 2, 2018.  (*Id.* ¶ 163.) Thereafter, on May 4, 2018, the Advisory Committee on Judicial Conduct ("ACJC") filed a Formal Complaint against Plaintiff, seeking her removal from the bench, based upon—Plaintiff alleges—Defendants' fabricated evidence and malicious charges.  (*Id.* ¶ 180.)  Over the course of seven days in January and February 2019, the ACJC held a Formal Hearing in which Plaintiff was represented by counsel, presented witnesses, and filed briefs.  (D.E. 13-8 at 8–9; D.E. 17 at 3.) Following the hearing, the ACJC recommended Plaintiff's removal from the bench; the New Jersey Supreme Court has not yet determined whether to adopt the ACJC's recommendation.  (*See* D.E. 13-8 at 6, 11; D.E. 17 at 3, 25–26.)

Plaintiff filed the instant suit on September 10, 2019 and filed her Amended Complaint one day later.  (D.E. 1, 2.)  The Amended Complaint alleges ten counts: Pattern and Practice (Municipal and Governmental Liability) (Count I);[1] Violations of 42 U.S.C. § 1983 for Malicious Prosecution (Count II); Violations of 42 U.S.C. § 1985 for Conspiracy (Count III); Violations of 42 U.S.C. § 1983 for Supervisory Liability - Negligent Training (Count IV); Violations of 42 U.S.C. § 1983 for Negligent Hiring/Retention (Count V); Violations of 42 U.S.C. § 1983 for Race/Gender Discrimination (Count VI); Violations of 42 U.S.C. § 1985(3) for Conspiracy with Racial Animus (Count VII); Negligent and Intentional Infliction of Emotional Distress (Count VIII); Violations of the New Jersey Civil Rights Act (Count IX); and Punitive Damages (Count X).  Defendants subsequently filed the instant motion to dismiss and the parties timely completed briefing.  (D.E. 13, 17, 20.)

## II.   <u>LEGAL STANDARD</u>

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a Motion to Dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1] The individual defendants are sued only in their individual capacity.  However, Count I is a *Monell* claim, alleging that the individual defendants' § 1983 liability can be imputed to the Township of Woodbridge because their actions were part of a municipal pattern or practice.  (*See* D.E. 17 at 14–15 (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)).)

### III.     DISCUSSION

Defendants argue that Plaintiff's malicious prosecution and punitive damages claims (Counts II and X) are barred by the collateral estoppel doctrine and that her remaining claims (Counts I, III – IX) are barred by a two-year statute of limitations.  (D.E. 13-8 at 15–28.)  For the reasons discussed below, this Court holds that Plaintiff may proceed with her malicious prosecution and punitive damages claims but her remaining claims are time-barred.

#### A.     Malicious Prosecution and Punitive Damages (Counts II and X)

Defendants argue that the doctrine of collateral estoppel bars Plaintiff's malicious prosecution and punitive damages claims because the issues were fully litigated during the ACJC proceeding.[2]  (D.E. 13-8 at 22–27.)  "Collateral estoppel bars a party to an earlier action from litigating an issue in a later action if (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) that determination was essential to the prior judgment."  *Jayasundera v. Garcia*, 684 F. App'x 254, 255 (3d Cir. 2017) (citing *Burlington N. R.R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231–32 (3d Cir. 1995)).

Here, the ACJ took no position on whether there was probable cause for Plaintiff's arrest and/or whether her prosecution was malicious.  (*See* D.E. 13-7 ("ACJC Presentment") at 43 ("[T]he sole issue before this Committee is not whether [Plaintiff], in failing to notify the [Woodbridge Police Department] of Mr. Prontnicki's whereabouts, committed a crime, but rather whether [Plaintiff's] conduct violated her *ethical obligations* under the Code of Judicial Conduct." (emphasis in original)).)  In fact, the ACJC explicitly stated that it took "no position on the merits" of the dismissal of the hindering charges against Plaintiff or on the State's assertion that it "lacked sufficient evidence to prove [Plaintiff's] guilt beyond a reasonable doubt."  (*Id.* at 4–5.)  Thus, the sole issue that was adjudicated before the ACJC—whether Plaintiff violated the Code of Judicial Conduct—is not "identical" to the issue of malicious prosecution that Defendants seek to preclude from litigation in this matter.  Because the first element of collateral estoppel cannot be met, *see Jayasundera*, 684 F. App'x at 255, this Court will not dismiss Plaintiff's claims for malicious prosecution and punitive damages.[3]

#### B.     Remaining Claims (Counts I, III–IX)

The statute of limitations for § 1983 actions in New Jersey is two years.  *See Backof v. N.J. State Police*, 92 F. App'x 852, 855 (3d Cir. 2004) (citing N.J. Stat. Ann. § 2A:14-2).  "[A] cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or should have known of the injury upon which its action is based.  The determination of the time at which a claim accrues is an objective inquiry; we ask not what the plaintiff actually knew but what a

---

[2] More precisely, Defendants argue that Plaintiff's claims are barred in their entirety by the doctrine of collateral estoppel.  However, because this Court will dismiss the remaining claims for being time-barred, it will only analyze the doctrine of collateral estoppel as it applies to Plaintiff's malicious prosecution and punitive damages claims.

[3] Because this Court holds that the ACJC's recommendation cannot provide a basis for collateral estoppel of Plaintiff's claims, it denies Defendants' request to stay this matter pending the New Jersey Supreme Court's final decision whether to adopt the recommendation.  (*See* D.E. 13-8 at 29.)

reasonable person should have known." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (internal quotation marks and citations omitted).

As Plaintiff was aware of her injury at the time of her arrest, the two-year limitations period began to run on June 11, 2013, and expired in June 2015, absent some basis for a later accrual date or equitable tolling. *See Brown v. Elmwood Park Police Dep't*, Civ. No. 19-9565, 2019 WL 2142768, at *2 (D.N.J. May 16, 2019) (citing *Kach*, 589 F.3d at 634).[4] Plaintiff provides no such basis here, arguing only that the claims are not time-barred because they are "ancillary" to her timely filed § 1983 malicious prosecution claim. (*See* D.E. 17 at 13–17); *see, e.g.*, *Wallace v. Kato,* 549 U.S. 384 (2007) (holding that the statute of limitations for a claim seeking damages for a false arrest in violation of the Fourth Amendment began to run when claimant was detained and not when his criminal case was dismissed). Plaintiff's § 1983 claims for false arrest, false imprisonment, racial discrimination, and gender discrimination (Counts I and IV–VI), all of which arise from her June 11, 2013 arrest, are therefore time-barred.

Plaintiff's §§ 1985 and 1985(3) conspiracy claims (Counts III and VII) are similarly barred by the two-year statute of limitations. *See Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989); *see also Jones v. Middletown Twp.*, 253 Fed. Appx. 184, 187 (3d Cir. 2007). The same is true for her state law claims (Count VIII and IX). *See Fraser v. Bovino*, 721 A.2d 20, 25 (N.J. Super. Ct. App. Div. 1998); *Dean v. Deptford Twp.*, Civ. No. 13-5197, 2015 WL 13640263, at *1 (D.N.J. Apr. 1, 2015) (citations omitted). Counts I and III – IX are therefore dismissed with prejudice.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**. An appropriate order follows.

                          /s/ Susan D. Wigenton
                        **SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties
      Edward S. Kiel, U.S.M.J.

---

[4] At the very latest, the limitations period began to run on September 6, 2013, when Plaintiff's attorney filed an Initial Notice of Claim for Damages with the Township of Woodbridge, which contained factual allegations and claimed that employees of the Woodbridge Police Department were liable to Plaintiff for her "false arrest, false imprisonment, malicious prosecution, violation of her Fourth and Fourteenth Amendment rights, violation of New Jersey's Constitution and Civil Rights Laws as well as numerous other torts." (D.E. 13-3.). The claims are time-barred in either case.