<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CARLIA BRADY, | Civil Action No. 19-17868 (SDW) (ESK) |
| Plaintiff, | |
| v. | **OPINION** |
| TOWNSHIP OF WOODBRIDGE, *et al.*, | July 29, 2021 |
| Defendants. | |

**WIGENTON,** District Judge.

Before this Court are Defendants Township of Woodbridge, Robert Hubner, Brian Murphy, Sean Grogan, Walter Bukowski, James Mullarney, and Robert Bartko's (collectively, "Defendants") Motions for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c).  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  Venue is proper pursuant to 28 U.S.C. § 1391.  This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Rule 78.  For the reasons stated herein, Defendants' Motions are **DENIED**.

## I.   BACKGROUND AND PROCEDURAL HISTORY

### A.   Plaintiff's Factual Allegations

This Court summarized Plaintiff's factual allegations in its April 17, 2020, Letter Opinion partially granting and partially denying Defendants' Motion to Dismiss.  (*See* D.E. 21 at 1–3.) This Court repeats Plaintiff's allegations here to the extent necessary to address Defendants' Motions for Judgment on the Pleadings.

Plaintiff was sworn in as a judge in the Superior Court of New Jersey, Middlesex County, on April 5, 2013.  (D.E. 2 ("Am. Compl.") at Factual Allegations ¶ 5.)  The events giving rise to this suit began in June 2013, when Plaintiff lived with her then-boyfriend, Jason Prontnicki, in her Woodbridge home.  (*Id.* ¶¶ 7–8.)  Unbeknownst to Plaintiff, Mr. Prontnicki had outstanding warrants for second degree armed robbery and unlawful possession of a weapon.  (*Id.* ¶ 10.)

Plaintiff alleges that she ended her romantic relationship with Mr. Prontnicki on June 9, 2013, when he loaned her car to his friend and was unable to return it to her.  (*Id.* ¶¶ 11–13.)  She subsequently asked him to move out of her home and, on June 10th, went to the Woodbridge Police Department to report her car missing or stolen.  (*Id.* ¶¶ 13, 15.)  Plaintiff alleges that one of the Defendants then ran a background check on Mr. Prontnicki and discovered the outstanding warrants for his arrest, at which point Officer Robert Bartko, Sergeant Walter Bukowski, and Lieutenant James Mullarney began interrogating her about her relationship with Mr. Prontnicki. (*Id.* ¶¶ 24–27.)  Following two hours of questioning, the three officers informed Plaintiff of Mr. Prontnicki's outstanding warrants and instructed her to call them if she learned Mr. Prontnicki's location.  (*Id.* ¶¶ 31–32, 38–39.)

After Plaintiff returned home later that afternoon, Mr. Prontnicki returned as well and entered her home without her permission.  (*Id.* ¶¶ 44–47.)  Plaintiff alleges that she did not call the police while Mr. Prontnicki was present because she was fearful for her safety and the safety of her elderly parents who were visiting.  (*Id.* ¶ 48.)  According to Plaintiff, Mr. Prontnicki stayed for about an hour, during which time he stated that he would be staying at his brother's home.  (*Id.* ¶¶ 50, 51.)  Plaintiff claims that she called and left a voicemail for Officer Bartko minutes after Mr. Prontnicki left.  (*Id.* ¶ 54.)  Plaintiff alleges that her voicemail included information about where

Mr. Prontnicki planned to stay, but that this portion of the voicemail was deleted in the copy that Defendants later produced. (*Id.* ¶¶ 55, 56, 146–49.)

The next day, Mr. Prontnicki called Plaintiff and the pair spoke for two hours. (*Id.* ¶¶ 62, 63.) After the call, Plaintiff called and left another voicemail for Officer Bartko to follow up on her previous message. (*Id.* ¶ 66.) That afternoon, Mr. Prontnicki returned and again entered Plaintiff's home without her permission. (*Id.* ¶¶ 77, 78.) His entry was witnessed by Lieutenant Murphy and Detective Grogan, who were surveilling Plaintiff's home. (*Id.* ¶¶ 68–74.) Mr. Prontnicki left Plaintiff's home an hour later, at which point Woodbridge police officers arrested him two blocks from the home. (*Id.* ¶¶ 83, 89.) Minutes later, the officers entered Plaintiff's home and also arrested her, without a warrant, allegedly for not calling the police while Mr. Prontnicki was inside her home. (*Id.* ¶¶ 93, 95.)

While in a holding cell, Plaintiff alleges that she informed Officer Bartko of the two voicemails that she had left for him, which he had not checked. (*Id.* ¶¶ 104–06.) Plaintiff alleges that Officer Bartko then checked his messages and confirmed that Plaintiff had attempted to inform him of Mr. Prontnicki's whereabouts. (*Id.* ¶¶ 110, 111.) Despite this confirmation, Defendants refused to dismiss the charges against her. Instead, Lieutenant Murphy, Detective Grogan, and an assistant prosecutor visited the home of a Superior Court judge that evening to seek the issuance of Complaint-Warrants against Plaintiff for violations of the hindering statute. (*Id.* ¶¶ 115–25.) The judge issued the Complaint-Warrants based on Lieutenant Murphy's false sworn testimony that Plaintiff had never contacted the police. (*Id.*)

Plaintiff alleges that she was then maliciously prosecuted for almost five years. (*See id.* ¶ 163.) On May 13, 2015, a Somerset County grand jury indicted Plaintiff on three counts: (1) second degree official misconduct in violation of N.J.S.A. 2C:30-2(b); (2) third degree hindering

by harboring or concealing an individual in violation of N.J.S.A. 2C:29-3(a)(1); and (3) third degree hindering by aiding and assisting an individual in avoiding apprehension by providing money, clothing and/or transportation in violation of N.J.S.A. 2C:29-3(a)(2).[1]  (*See id.* ¶ 152.) Plaintiff alleges that this indictment was based on false testimony and the fraudulently obtained Complaint-Warrants.  (*Id.* ¶¶ 151–52.)  Plaintiff also alleges that Defendants destroyed the original device on which her voicemails were recorded, as well as the original recordings, despite a preservation notice.  (*Id.* ¶ 149.)  This destruction was disclosed to Plaintiff in certifications filed by Woodbridge police officers on the eve of her criminal trial in January 2018.  (*See id.* ¶ 160.)

## B.    New Jersey State Court Decisions

Plaintiff's criminal matter was handled by the Superior Court of New Jersey, Law Division, Somerset County.  On Plaintiff's motion, the Somerset County trial court dismissed the official misconduct charge, holding that Plaintiff had no duty clearly inherent in her judicial office to call and report Mr. Prontnicki's whereabouts.  *See State v. Brady*, 172 A.3d 550, 558 (N.J. Super. Ct. App. Div. 2017) (summarizing the trial court's decision).  On September 11, 2017, the Appellate Division affirmed the trial court's ruling, permitting only the two hindering charges to proceed, and remanding the matter for further proceedings.  *See id.* at 568.

On remand, the trial court ordered Mr. Prontnicki to testify despite his assertion of his privilege against self-incrimination.  (*See* D.E. 51-3 ¶ 2.)[2]  On February 28, 2018, the Appellate

---

[1]  N.J.S.A. 2C:29-3(a) states, in relevant part:

> A person commits an offense if, with purpose to hinder the detention, apprehension, investigation, prosecution, conviction or punishment of another for an offense or violation . . .  he:
> (1) Harbors or conceals the other;
> (2) Provides or aids in providing a weapon, money, transportation, disguise or other means of avoiding discovery or apprehension or effecting escape; . . . .

[2]  D.E. 51-3 is a certification filed by the prosecutor in the state court matter, dated March 1, 2018, and available on the court's docket, No. SOM-13-000362.  Defendants' counsel Fredrick Rubenstein, Esq., submitted the document as Exhibit A to his certification in support of the instant motion.  (D.E. 51-2.)

Division granted Mr. Prontnicki's interlocutory appeal and reversed the trial court's order.  (*See id.*)  The State thereafter moved to dismiss the remaining criminal charges with prejudice.  *See Matter of Brady*, 243 N.J. 395, 399 (2020) (summarizing the procedural history of the criminal case).  In a certification accompanying the motion, Assistant Prosecutor W. Brian Stack noted a lack of sufficient evidence to prove Plaintiff's guilt beyond a reasonable doubt absent Mr. Prontnicki's testimony.  (D.E. 51-3.)  The trial court granted the State's motion on March 2, 2018, and Plaintiff was reinstated as a judge on March 6, 2018.  *See Matter of Brady*, 243 N.J. at 399.

Thereafter, on May 4, 2018, the Advisory Committee on Judicial Conduct ("ACJC") filed a Complaint against Plaintiff in regard to her actions on June 10 and 11, 2013, for violations of the Code of Judicial Conduct.  *See id.*  Following a seven-day hearing, the ACJC recommended Plaintiff's removal from the bench.  *See id.*  On August 6, 2020, the New Jersey Supreme Court issued a decision concurring with the ACJC's factual findings in part and ordering a three-month suspension from the bench.  *See id.* at 412, 423.  Significantly, upon *de novo* review of the record before the ACJC, the New Jersey Supreme Court concluded that Plaintiff's actions on June 10 and 11, 2013, violated multiple canons of the Code of Judicial Conduct.  *See id.* at 411, 423.

## C.    Procedural History

Plaintiff filed this suit on September 10, 2019, and filed her Amended Complaint one day later.  (D.E. 1, 2.)  The Amended Complaint alleges ten counts: Pattern and Practice (Municipal and Governmental Liability) (Count I); Violations of 42 U.S.C. § 1983 for Malicious Prosecution (Count II); Violations of 42 U.S.C. § 1985 for Conspiracy (Count III); Violations of 42 U.S.C. § 1983 for Supervisory Liability - Negligent Training (Count IV); Violations of 42 U.S.C. § 1983 for Negligent Hiring/Retention (Count V); Violations of 42 U.S.C. § 1983 for Race/Gender Discrimination (Count VI); Violations of 42 U.S.C. § 1985(3) for Conspiracy with Racial Animus

(Count VII); Negligent and Intentional Infliction of Emotional Distress (Count VIII); Violations

of the New Jersey Civil Rights Act (Count IX); and Punitive Damages (Count X).

On Defendants' Rule 12(b)(6) Motion to Dismiss, this Court dismissed Counts I and III–

IX as time-barred but allowed Plaintiff's claims for malicious prosecution and punitive damages

to proceed.  (*See* D.E. 21 at 4–5.)  In its Letter Opinion, this Court rejected Defendants' argument

that Plaintiff's malicious prosecution claim was barred by collateral estoppel and held that the

ACJC "took no position on whether there was probable cause for Plaintiff's arrest and/or whether

her prosecution was malicious."  (*Id.* at 4 (citation omitted).)  Plaintiff subsequently filed a Motion

for Reconsideration, on May 27, 2020, and this Court reinstated her dismissed claims "***only*** to the

extent that they are based on her underlying claim of malicious prosecution."  (D.E. 39 at 3.)

Following the New Jersey Supreme Court's decision, Defendants filed the instant Motion for

Judgment on the Pleadings, arguing that Plaintiff's remaining claims are barred under collateral

estoppel by the New Jersey Supreme Court's factual findings.  (D.E. 51–55, 58.)[3]  Plaintiff filed a

brief in opposition and Defendants filed a reply.  (D.E. 75, 77.)

## II.    LEGAL STANDARD

When examining a motion for judgment on the pleadings under Rule 12(c), the court

examines the pleadings in the same manner as it would a Rule 12(b)(6) motion to dismiss.  *Rosenau*

*v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008).  The court must "view the facts presented in

the pleadings and the inferences to be drawn therefrom in the light most favorable to the

nonmoving party."  *Id.*  Judgment may only be granted if "the movant clearly establishes that no

---

[3] D.E. 51 was filed by all Defendants and contains the substance of Defendants' arguments.  The individual police officers retained separate counsel on the issue of punitive damages and filed additional motions adopting the arguments set forth in D.E. 51: D.E. 52 was filed by Robert Hubner, D.E. 53 was filed by Sean Grogan and Brian Murphy, D.E. 54 was filed by Robert Bartko, D.E. 55 was filed by James Mullarney, and D.E. 58 was filed by Walter Bukowski.  D.E. 52, 53, and 54 are styled as a "cross motion[s]."

material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Id.* The court may rely only on the pleadings and documents integral to or relied on by the complaint. *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004).

## III.   **DISCUSSION**

### A.   **Collateral Estoppel and Malicious Prosecution**

#### 1.   *Applicable Law*

To prove malicious prosecution under 42 U.S.C. § 1983, Plaintiff must demonstrate that: (1) Defendants initiated a criminal proceeding; (2) the criminal proceeding ended in Plaintiff's favor; (3) the criminal proceeding was initiated without probable cause; (4) Defendants acted maliciously or for a purpose other than bringing Plaintiff to justice; and (5) Plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of the criminal proceeding. *See Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003) (citation omitted). Defendants "acknowledge" that the New Jersey Supreme Court did not decide whether Defendants subjected Plaintiff to malicious prosecution.  (D.E. 51-5 at 1.)  Defendants argue, however, that the factual findings made by the New Jersey Supreme Court by clear and convincing evidence bar Plaintiff's claims as a matter of law because the decided facts prove that Defendants had probable cause to arrest her.  (*See id.* at 1–2; D.E. 51-6 at 6–17.)[4]

A court reviewing the *record* in a prior judicial proceeding "may take notice only of the existence of such testimony, not the truth of the factual assertions made therein." *Gross-Quatrone v. Mizdol*, 811 F. App'x 95, 99 (3d. Cir. 2020) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) ("[A] court that examines a transcript of a prior proceeding to find facts converts a

---

[4] "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995) (citation omitted).

motion to dismiss into a motion for summary judgment." (internal quotation marks and citation omitted))).  However, a prior court's *findings* of fact may be "entitled to preclusive effect."  *Id.* at 98 n.5 (citing *Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1317 (7th Cir. 1995)).

Under the doctrine of collateral estoppel, also known as issue preclusion, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Burlington N. R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231–32 (3d Cir. 1995) (quotation omitted).  Under New Jersey law, the party asserting collateral estoppel must establish:

> (1) The issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*Parker v. Estate of Blair*, Civ. No. 19-21093, 2020 WL 6707963, at *4 (D.N.J. Nov. 16, 2020) (quoting *Olivieri v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003, 1009 (N.J. 2006)).  "Issue" is not synonymous with legal theory; issues can be "issues of evidentiary fact, ultimate fact (i.e., the application of law to fact), and of law." *Id.* (citing Restatement (Second) of Judgments § 27, cmt c).  "A decision on any type of 'issue' acts as collateral estoppel against later attempts to relitigate it." *Id.* (citation omitted).

　　　　2.　　*Analysis*

In concluding that Plaintiff's actions on June 10 and 11, 2013, violated multiple canons of the <u>Code of Judicial Conduct</u>, the New Jersey Supreme Court made multiple factual findings by clear and convincing evidence. *See Matter of Brady*, 243 N.J. at 412–20.  Notably, the court found that Plaintiff had "ample opportunity to contact" the police in advance of Mr. Prontnicki's visits

to her home and failed to do so. *Id.* at 412. "When she did call the police after [Mr.] Prontnicki's departure on each of those two days, she was not forthcoming about her contacts with him and did not reveal her detailed knowledge of his activities." *Id.* The court's majority also concluded, over a strong dissent, that Plaintiff's actions were not motivated by fear of being physically harmed by Mr. Prontnicki, and were instead motivated by a desire to preserve both her judicial career and her romantic relationship with Mr. Prontnicki. *Id.* 416–17; *see id.* at 423–46 (Albin, J., dissenting).

These factual issues were actually litigated in the prior proceeding to a final judgment on the merits. The findings were essential to the New Jersey Supreme Court's conclusion that Plaintiff violated the <u>Code of Judicial Conduct</u> and its judgment of suspension. The second, third, fourth, and fifth requirements of collateral estoppel are therefore clearly satisfied here.

However, what is also notable about the New Jersey Supreme Court's decision are the factual findings that it *declined* to make, findings that are necessary to decide Plaintiff's claim for malicious prosecution. The New Jersey Supreme Court noted the dueling testimonies of the parties' forensic audio experts as to whether the Woodbridge police tampered with the recordings of Plaintiff's voicemails to Officer Bartko, thereby omitting additional information that she communicated regarding Mr. Prontnicki's whereabouts. *Id.* at 413–15. However, the court did not make any findings as to whether Woodbridge police tampered with the voicemails, finding instead that Plaintiff "was not fully forthcoming" even if the voicemails contained the allegedly deleted information. *Id.* at 413. The court also did not make any findings as to whether Plaintiff's failure to be forthcoming with the police was criminal, noting instead that "[a] judge's acts need not be criminal in order to implicate the Code; '[c]onduct that in itself does not constitute a criminal offense may be violative of standards governing performance, warranting discipline or removal for cause.'" *Id.* at 410 (quoting *In re Yaccarino*, 101 N.J. 342, 353 (1985)). Finally, the court

noted but did not analyze Lieutenant Murphy's admission to the ACJC that he was aware of Plaintiff's voicemails and did not disclose them to the judge who signed the Complaint-Warrants for Plaintiff's arrest. *Id.* at 406 ("Before the ACJC, Murphy conceded that the statement in the complaint warrant that respondent never tried to contact law enforcement was inaccurate.").

Because the New Jersey Supreme Court did not decide or analyze these factual issues, even assuming that collateral estoppel applies to the factual issues that the Court *did* decide, Plaintiff's claim for malicious prosecution is not barred as a matter of law. The question of probable cause is generally a jury matter, and a district court cannot find that probable cause existed as a matter of law if the evidence, viewed most favorably to the plaintiff, could reasonably support a "contrary factual finding." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788–89 (3d Cir. 2000) (citations and quotations omitted). Based on the content of Plaintiff's voicemails, a reasonable jury could conclude that Plaintiff's failure to be forthcoming was not criminal, even if it did violate her judicial ethics obligations. If Plaintiff's allegations that Defendants tampered with evidence and presented false testimony to the Complaint-Warrants judge and grand jury are proven at trial, a reasonable jury could conclude that Defendants did not in fact have probable cause to initiate and continue criminal proceedings against Plaintiff.[5] Such a determination would not invalidate the New Jersey Supreme Court's decision that Plaintiff violated the <u>Code of Judicial Conduct</u>.

Separately, to the extent Defendants argue that Plaintiff's claims are collaterally estopped by issues decided in her criminal proceeding, (*see* D.E. 51-6 at 17–21), Defendants' arguments are

---

[5] Defendants also argue that Plaintiff's malicious prosecution claim is collaterally estopped because a grand jury indicted her, the trial court denied her motion to dismiss the indictment's hindering charges, and the Appellate Division affirmed the trial court's decision. (*See* D.E. 51-6 at 17–18.) Although indictment by a grand jury creates a presumption of probable cause, that presumption can be rebutted by a finding that Defendants presented false testimony to the grand jury, as Plaintiff alleges. *See Woodyard v. Cty. of Essex*, 514 F. App'x 177, 183 (3d Cir. 2013) ("A grand jury indictment or presentment constitutes prima facie evidence of probable cause to prosecute; this presumption will only be overcome by evidence that the presentment was procured by fraud, perjury or other corrupt means." (quotation omitted)). Whether Defendants did in fact present false testimony to the grand jury has yet to be decided by any court.

off the mark.  Prosecutor W. Brian Stack's certification is not a judicial finding and cannot be noticed for the truth of its assertions.  *See Gross-Quatrone v. Mizdol*, 811 F. App'x 95, 99 (3d. Cir. 2020) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004)).  Furthermore, the trial court did not make any findings regarding Plaintiff's guilt or innocence on the hindering charges, and its decision therefore does not preclude Plaintiff from proving a favorable termination of the prior proceeding.  (*See* D.E. 51-4)[6]; *Hector v. Watt*, 235 F.3d 154, 156 (3d Cir. 2000), *as amended* (Jan. 26, 2001) (noting that a plaintiff must "be innocent of the crime charged in the underlying prosecution" to prove malicious prosecution).  Plaintiff may therefore proceed with her claims for malicious prosecution and punitive damages, as well as her ancillary claims to the extent that they are based on her underlying claim for malicious prosecution.

### B.     Qualified Immunity

In the alternative, the individual officers argue that they are entitled to qualified immunity. (*See* D.E. 51-6 at 23–27; D.E. 77-2 at 13–14.)  The doctrine of qualified immunity shields government officials from civil liability so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (quotation marks omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Smith v. Twp. of Clinton*, 791 F. App'x 363, 366 (3d Cir. 2019) (quotation omitted).

"Although qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury."

---

[6] The trial court's judgment of dismissal, (D.E. 51-4), is dated March 14, 2018, and available on the court's docket, No. SOM-13-000362.  Defendants' counsel Fredrick Rubenstein, Esq., submitted the document as Exhibit B to his certification in support of the instant motion.  (D.E. 51-2.)

*Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006) (citations omitted).  The facts in the Amended Complaint, if taken as true, show that Defendants: (1) knowingly misled a judge to secure Complaint-Warrants against Plaintiff, (2) knowingly misled a grand jury to secure an indictment against Plaintiff, and (3) knowingly tampered with and destroyed potentially exculpatory evidence, including Plaintiff's voicemails and their original recording device.  (*See* Am. Compl. at Factual Allegations ¶¶ 115–63.)  These allegations, if proven, could show that Defendants violated Plaintiff's clearly established rights, without probable cause and without a reasonable belief in the existence of probable cause.  *See Gonzalez v. Elizabeth Police Dep't*, Civ. No. 18-3765, 2021 WL 1399859, at *9 (D.N.J. Apr. 13, 2021) (noting that "the right to be free from malicious prosecution is clearly established" and declining to rule on qualified immunity on summary judgment because a genuine dispute of material fact existed as to whether the arresting officer had probable cause).  Plaintiff is entitled to an opportunity to prove her factual allegations in this matter, and this Court will not grant qualified immunity to the individual officers on the pleadings while material fact issues remain to be resolved.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, Defendants' Motions for Judgment on the Pleadings are **DENIED**.  An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:      Parties
         Edward S. Kiel, U.S.M.J.